Good morning. Welcome to the Ninth Circuit. We're here for three days of argument, today being the first. We've got a fairly full calendar. On the other hand, we will make sure everyone has a chance to argue their case as far as it needs to be argued. The first case on the calendar is Scott v. United States Trustee. We have read your briefs and we are looking forward to your argument. My name is Charles Leon and I represent the appellant in this case, Julie Scott. I'm not going to rehash anything that Your Honors have had an opportunity to read. What I'd like to do is to focus the Court's attention on what we believe to be the central feature of the issue before yourselves. And in that regard, I'd like to reserve to myself about five minutes of rebuttal time. Your Honor, the central question that the Court has to resolve is really more a personal question before this Court, before any appellate court in the United States. And that is whether a nonlawyer who is a bankruptcy petition preparer, as that term is defined under Section 110a1 of Title XI, can distribute materials which are written by a licensed attorney, which are general information about bankruptcy law and bankruptcy procedure, without having engaged in the unauthorized practice of law. The lower courts, both the Bankruptcy Court here and the District Court, made their determinations that Ms. Scott had violated Section 110 by having engaged in the unauthorized practice of law. Counsel, didn't your client do a little more than just distribute documents or paperwork or a pathway? Didn't she do a little more than that? Well, she actually took the material, the responses, and had them transposed from the questionnaire into the official forms, but I don't think that was ever an issue below. So your position is that the only issue was whether or not distribution of the materials constituted the unauthorized practice of law? That, we believe, is the central question that the Court has to focus on. But if she did more than simply distribute the materials, how can we confine ourselves to deciding whether that was the unauthorized practice of law when that's not the only thing she did? Well, the unauthorized practice of law, the first thing that jurors have to do is to find the frame of reference for what would constitute the unauthorized practice of law, and that, of course, is the State of Idaho's law, the Idaho State law. And there is no, nothing in the Idaho State law that directs itself to the activities that were engaged in by Ms. Scott. And the – and that is part, of course, of the problem with relying upon an unauthorized practice of law notion as the basis for finding a violation of Title XI. Title XI is very clear in subsection K that there is a deference to the non-bankruptcy law, which in this case, of course, is the State law, to determine what constitutes the unauthorized practice of law. The Idaho statute at section 3104 specifically refers to legal practice, practice of law. If you're going to practice law, you have to be a licensed attorney. And that's as far as that statute goes. There's no illumination. There's no – there's no elucidation on what that – what that stands for. Sotomayor, hasn't the Idaho Supreme Court interpreted the Idaho Code section regarding the unauthorized practice of law? It has in a number of different instances, Your Honor, yes, but not insofar as the distribution of materials which are general information, they're not specifically designed for any particular individual. There's never been an Idaho Supreme Court case that has come down having determined that the distribution of such materials. Let's assume that we are addressing more than the distribution of the pamphlets or the information. Would the Idaho Supreme Court decisions encompass the conduct that was engaged in here? And I would have to ask, Your Honor, what conduct you would be referring to. What did your client do? Well, she provided materials to her customer. And she filled out the form, the bankruptcy form? No, ma'am. She did not do that. Who did that? That was done by the customer herself. She provided all of the information that ultimately wound up on the official form. Who actually filled out the form and filed the form? The customer did that. When you say actually filled out the form, are you making a distinction between the introduction of the original information or the actual physical placement? The form that has to be filed in bankruptcy court. Who prepared that? That was done by a processing center from the materials that were given to the processing center provided by the customer. Okay. So it's your representation to the court that your client had nothing to do with preparing the form? Correct. Is that your representation? That is correct. She did not. What are you referring to when you refer to the processing center? What's that? It's a, excuse me, it's a word processing center which takes the information that's contained on the questionnaire and transposes it from that format to the format that's. Who's in charge of that? A woman who runs the processing center. Who sends the material to her? It's sent to her by Ms. Scott. But there's no substantive, there's no involvement with the substantive substance of information by Ms. Scott. She's simply a conduit for the information that the customer, the debtor, Ms. Dozer, the Dozers in this case, gave to her. She doesn't in any way affect the form or the substance of that information. She's a conduit for the typist. What does she charge for then? When she charges for her services, what is she charging for? She's charging for faxing forms from her office to the word processing center. Is that what she's charging for? She charges for the services of allowing the customer to have, excuse me, the petition prepared in the form ultimately for filing. Okay. And what was the fee for that? $199. And so what did the $199 get the client, the customer? What was the customer paying for specifically? What tasks performed by Ms. Scott? She pays for the services of being able to have the We the People franchisee provide her with a finally prepared or filled out set schedules, petition schedule, statement of financial affairs, all of the documents that are necessary to commence a Chapter 11 case. Why should the customer pay for that if the customer is doing the preparation, according to your representation? Well, it is not a function of, excuse me, why should the customer pay for that, if the customer doesn't feel as if the customer can do it all by himself or herself. The customer can come to We the People and allow We the People to be the conduit for the information. Just as there are many other services that are available in the country for people who don't want to do things themselves and who go to a person who doesn't affect the substance of what they're doing, it's simply a vehicle for allowing the final product to be produced. What's the role of the so-called supervising attorney? Supervising attorney is available to also provide general information about the law without regard to any specific facts that may be applicable in a punitive debtor's instance. But if the supervising attorney is only offering general advice and not specific advice tailored to the particular person, under your theory of the case, why is it necessary that that be an attorney? Because my understanding is that Ms. Scott says that she only gives general advice. So far you've not differentiated the types of advice that she gives and the supervising attorney gives. The information that the – there is no – effectively there is no difference between the general information that is contained in the materials that she distributes and the general information that is given by an attorney, by the supervising attorney. My question then is why do we have an attorney at all? I think it simply provides another basis for the customer to feel comfortable with having used the services of We the People. It's not a matter of giving to the customer any specific information in response to the facts and circumstances. Well, in your view, the role of the supervising attorney is not required by the provision of Idaho law that prevents unauthorized practice of law? I'm sorry, Your Honor. So in your view, the role of the supervising attorney is not required by the Idaho prohibition against unauthorized practice of law? That is correct. It would not constitute the unauthorized practice of law. Okay. So the role of the supervising attorney could be employed by an educated layperson? Theoretically, yes. Theoretically. What do you mean when you say theoretically? Well, because the supervising attorney has other responsibilities that have nothing to do with providing – being accessible to a customer that seeks to ask the supervising attorney any questions. And by the way, Your Honor, in this record before you, there is absolutely no evidence that the supervising attorney played any role in this case whatsoever. There's no evidence at all that those are – I understand that. But the supervising attorney also has, as I say, other roles with respect to the franchisee, which have nothing to do – I understand that, too. As I – as I understand what you've just explained, Ms. Scott would answer questions of a customer and interpret any legal provisions for the customer that the customer could not understand in order to fill out the materials? No, Your Honor. No, Your Honor. Ms. Scott would never interpret anything and would only, if asked a question, respond by either saying that she couldn't answer it because it required the – would be, in effect, giving advice, or would simply repeat something that the customer already knew or was able to find out on her own without regard to any substance at all, without regard to the specific facts in the debtor's circumstances. So her role is simply read the materials? Yes. That would be a fair statement, sure. The distinct – there are two propositions which lie at the heart of what it is that we're trying to focus on here, the first of which is the difference between general information on the one hand and information that is specifically tailored to respond to a question or a circumstance of an individual. A second aspect of this is the difference between simply producing or providing materials and preparing and drafting and crafting those materials. And that lies at the heart of a number of the cases which have been cited and two cases which we have provided the Court with additional supplemental citations to, the recent case in the Central District of California out of the Bankruptcy Court, the Leon case, and the Supreme Court in the United States' decision in the Low v. SEC, where it was made very clear that for so long as the materials that are provided do not focus specifically in response to the facts and circumstances of an individual's situation, for so long as they are just general materials that discuss the law and or procedure, there is no giving of legal advice. Ms. Scott's declaration, she said, we the people officers charged $199 to prepare a Chapter 7 bankruptcy petition. Do you find any significance in her phraseology that she described the services as preparing the petition? The word prepare, Your Honor, is significant simply because it's the language that the statute uses to identify and characterize a person who is involved in the process of assisting an individual produce the final product that's necessary to be filed. The document the Ms. Scott does not craft. She does not draft. She does not create the materials that are used. She simply distributes them. She distributes them free of charge to the customer who becomes her customer after having signed a contract to do so. The preparation of those materials is done by a licensed attorney, and they are not designed in any way, shape or form to be responsive to any particular facts or circumstances of a customer who comes into the store and who becomes a customer of We the People. The word prepare is simply following the language of the statute. And if Your Honor looks at the dictionary definition of the word, you'll find that it can encompass a broad range of activities, from the crafting, on the one hand, simply to the production at the end after everything has been completed. So it's not a term of art in that context. She has not crafted them or drafted them or personalized them in any way. The distinction that I was focusing on, Your Honors, with respect to the differences between general information on the one hand and specific information on the other, the crafting of it on the one hand is against the distribution of it on the other, arises in a number of these cases that we've cited, too, and believe that that is dispositive of the argument that Ms. Scott engaged in the practice of law and, therefore, gave legal advice and, therefore, committed the unauthorized practice of law. As a matter of fact, there are several Idaho cases from the state courts which are instructive in this regard, and that is the Missouri case and the Matthews cases which are cited. And it's very important because those cases speak to the proposition that the legal advice that was the concern of the courts there, the unauthorized practice of law that was the concern of the courts there, was a function of the respondents having crafted the documents or, in the case of oral communication, that there was actually information specific to the facts and circumstances of the debtor. And that was this Court's decision in Taub where this Court found that a violation of 110 took place because the Respondent there had been engaged in oral communications of a very specific nature with respect to the facts and circumstances of his customer. Your Honor, I see that I've been. Roberts. Why don't you save the rest of the time and you'll have a chance for rebuttal. Thank you. Thank you. May it please the Court. Daniel Meron from the Department of Justice on behalf of the United States Trustee's Office. And before you begin, I'd like to thank both parties for your willingness to readjust the timing of the argument. Thank you, Your Honor. I'd like to first begin by expressing our view as to what is and what is not really the central issue in this case. The Bankruptcy Court did not issue an injunction under 110J, nor under 110I did it order any damages or assess any penalties. It did one thing. It said under 110H, it made a finding that the charge of $199 here exceeded the value of the services that were rendered, in part because they were unfair and deceptive, and it reduced the fee from $199 to $90. That's the issue before the Court. And with respect to virtually all the findings that the Bankruptcy Court made, they were independent of any notion of unauthorized practice of law. So it's your view that the issue of unauthorized practice of law is not before us for a decision? I don't think it's necessary for you to reach it, because the only respect in which the Court relied on unauthorized practice of law was with respect to the distribution of the legal overview. And with respect to that, the judge made two findings, one, that it was the unauthorized practice of law, and two, that it was unfair and deceptive. And the reason he said it was unfair and deceptive is because he said that the overview contained a number of important mistakes. First, it didn't advise debtors at all that there was an option between Chapter 7 and Chapter 13, and that the choice between them is critical, and it's one that they had to think about. And it's really not surprising that it didn't. The only service Ms. Scott offered was Chapter 7. So if she were to direct someone to Chapter 13, that would be directing them out of her office and to somebody else. And he said, and the judge found that that was very misleading and it was very problematic. In fact, that's not just theoretical. In this very case, at the initial creditors' committee meeting, based on the filings of the Ms. Scott in this case, the Chapter 7 trustee looked at the document and said, well, you know, your monthly income actually exceeds your monthly debts. You may be better off under Chapter 13. I'm going to ask you perhaps to refile. She clarified that in the act that subsequently after the forms were filed, her husband had lost her job, and at this point she really had to proceed under Chapter 7. And he said, that's fine, but you've got to submit new schedules. So she ended up having to produce new schedules, I and J, which she produced on her own, and Ms. Scott did not prepare for her. But the findings that the bankruptcy court made here, that there was the services provided were unfair and deceptive, and that the price exceeded the value of the service, are aptly supported by the record. The charge here was $199. The evidence that was submitted, the contract between the debtor and the appellant specified that the service she'd be providing was typing, the forms, and computer time, and the price was $199. But the evidence before the bankruptcy court showed that that, by any measure, that widely exceeded the price that she would have paid for someone just to type the forms. There was an array of evidence on that. Here, in fact, all the typing was done not by Ms. Scott, but by the franchisor in California, and the only fee the franchisor in California took was $50 of the $200. So there was actually evidence that $50 was enough for the typing. And even the evidence that Ms. Scott introduced at most showed it was $150. And so by any measure, she was being charged, the debtors in this case were being charged 33 percent more than what the maximum rate you would find for typing. So the question is, well, why were they able to get away with that? Well, the evidence here showed is that what Ms. Scott offered folks in the way she was able to charge $199 is by essentially saying that you're getting an enhanced service. You're not just getting typing. What you're getting are, one, access to a supervising attorney. Now, Judge Fletcher, in answer to your question, could that, those questions have been answered by a layperson who is not an attorney? Well, as an economic matter, if they had advertised, oh, by the way, you've got access to some layperson who's going to answer your legal questions for you, I doubt very much that would have been an attraction. I mean, it was very important to this. And that's what the Bankruptcy Court found, that by touting that you had access to a supervising attorney, never telling people that the supervising attorney, in fact, didn't represent you, represented the franchisor, that that was misleading. And I think that that finding of fact is aptly supported. It's certainly not clearly erroneous. Let me ask you this. If the only thing we do is sustain the judgment on the basis that this was fraudulent and deceptive, that seems to leave unanswered what is probably a more far-reaching question in this case, as to say, is the operation that Miscott performs the unauthorized practice of law in Idaho? And I suspect that's the question that they're more interested in. Do we – I understand you're saying we don't need to reach it. Is it appropriately in the record so that we can reach it? I think with respect to the overview, the presentation of the overview, I do think the Bankruptcy Court rested on both grounds. So I think, Your Honor, the Court would have the authority to reach that question. And would you argue that question, then, please? The unauthorized practice of law question. It's our view that the – that in the context of a commercial service, so we're not dealing with someone who's just publishing a treatise out there. But in connection with the provision of a commercial service for a fee, when in that context you give someone legal advice, you are engaging in unauthorized practice of law. Now, giving legal advice sounds like a conclusory term. Can you say, without saying giving legal advice, what actually is being provided? Ms. Scott is giving these workbooks, this background information, is providing these forms and is saying, fill out the forms in light of what the advice that you're getting in these books. Am I understanding correctly what's going on? No. She did two things. She did that. Her testimony was that if someone came to her and asked, I have a legal question, she – her testimony was not that she said, well, we can't help you. Her testimony was that she would refer them to the supervising attorney. So when you look at the unauthorized practice of law question, Your Honor, it's not – this case is not about simply giving someone a book. It's telling them that they have access to a supervising attorney to answer general questions. And when the judge asked her, what do you mean by general questions, she couldn't explain it. In fact, what she said was, well, in the bankruptcy context, it means pretty much any question. That was her testimony. She provides more than just bankruptcy preparation services, Your Honor. And so here what you have is you don't have merely a book. You have the book and you have referral to a specific attorney to answer your questions. So I think those things have to be taken together. But to the extent that you're giving someone, you know, what I don't think is before the Court, I just want to clarify my answer to a prior question, is I think the question of what would the answer be if you had someone who did not refer anyone to a supervising attorney, who distributed just a pamphlet, and where that pamphlet was found to have no errors in it. Would that be the practice of law without anything else? That question I don't think is before the Court, because that's not this case. What's the relevance of whether it contains errors or not? I understand there's good practice and there's bad practice, but why is the question of error related to whether there's practice? Because the only way the practice comes in here under the statute is under a finding ultimately that it was unfair and deceptive. So what the judge basically says is, I find that it's unfair and deceptive because it contains errors and it's unauthorized practice. And would he have also found that it was unfair and deceptive if it contained no errors? I don't know that. He certainly didn't find that. That's not the finding before you. That's not the ruling before you. He said it contained errors. He contained it. Now, most notably, and it's interesting, the case that Mr. Veehan brought to this Court's attention from the Central District of California, it appears that apparently it was actually changed for practice, because the overview that was at issue there was entitled Bankruptcy Overview of Chapter 7 and Chapter 13. And apparently the provider there provided both services. So the central error that was contained here, the central misleading aspect in that it did not advise individuals that they had a choice to make between Chapter 7 and 13, that same error did not exist in the California case. Counsel, what's your response to the data's representation to the Bankruptcy Court that Ms. Scott did not give them any legal advice? Well, you know, again, I guess it's the same question as Judge Fletcher's question, which was, is that really conclusive return, but she really understood. She certainly was given, for example, forms here. And the workbook that she was given, it's one of the findings here, was that it was in lieu of the official forms, she was given instead this workbook. And what the judge said is with respect to most of the things that were in that workbook, it was essentially identical to the forms you can get either for free online or for $3 and hard copy from the Court. And the Court said to charge someone extra value for this service, essentially giving them something that's distilled and is no different, I can't justify that. Now, to the extent that there are differences, the differences were mistakes. It's said to use quick sale value instead of market value. It's said to, you know, to exclude pets from farm animals. It's said to use net income. So, again, there were a number of mistakes in these documents. And that's ultimately the holding here, that $199 was not justified as a fee. Now, I think the opinion of a layperson in an affidavit that was probably prepared for her as to whether she received, quote, legal advice. This was in open court when they were asked if they had been given any legal advice. And they said, if Ms. Scott had given them any legal advice, and they said no. It was not an affidavit. Your Honor, I don't believe that the debtors testified at the hearing. I believe it was when they appeared for the hearing and were told that they had to do a Chapter 13 instead of a Chapter 7. Oh, I'm sorry. I'm sorry. Before the – I'm sorry. You're referring before the Chapter 7 trustee. Right. Again, Your Honor, I don't know whether the – the record here basically doesn't suggest that they themselves consulted the supervising attorney. But the question is whether – and so it may very well be accurate. They never spoke with a supervising attorney. They never got advice from the supervising attorney. But what they did get – The question was whether or not Ms. Scott had given them legal advice, and they said no. So how does that fit into the equation of your argument? Well, I think whether Ms. Scott gave her legal advice doesn't dispose of the question of whether a $190 charge, which attracts people in part because you've asked it to a supervising attorney, is a reasonable fee. So – I was talking about the unauthorized practice of law question that you were addressing in response to Judge Fletcher's question. And I think their own opinion as to whether receiving – if you're referring to the overview, I think their own opinion as to whether they consider the overview to be legal advice, I think, is really on a question like that, which is a legal question. It's not dispositive. Let me ask you this. Are you saying that if you tell an individual that if you follow these materials and fill them out accurately that you will satisfy the bankruptcy laws?  Your Honor, the closest case that either side has cited to that in – before a State court on unauthorized practice is the Dacey case, which was cited by appellants in their reply brief. And there the Court said it did, that providing someone in the specific context of here are the forms, here's what you need to do, and here's a book that walks you through it. If that's what you're doing, that's the unauthorized practice. If you had simply published the book and sold it through a bookstore, that would be a different question. And which case is that? Dacey, D-A-C-E-Y, cited in the appellant's reply brief. And the distinction in the Idaho cases is between acting as a mere scrivener. That's what those cases say. If all you're doing is typing, and if the information you type is nothing more than what the client tells you to type, that is not the unauthorized practice. But that if what you do is you prepare forms and you do more than typing, you are engaged. And I think if what you are doing is telling people here's legal advice, here is a description of the law that will assist you in preparing these forms, you are doing more than being a mere typist. So the Idaho cases that are being cited really don't stand for the proposition that they're being cited for it. In fact, I believe they actually stand for the proposition that it would be the unauthorized practice. But again, I don't think the Court should reach out and decide that issue. It's really an issue of primarily Idaho law. And with respect to the issue of Federal law, I think here, given the findings that the service was deceptive and the charge was unreasonable, there are more than sufficient bases to dispose of this case. And the governing standard is the statutory standard of Section 110I1. The governing standard is whether or not the petition preparer has, quote, committed any fraudulent, unfair, or deceptive act. I don't see an unauthorized practice of law anywhere in the statute. Well, there's a Savings Clause K which says that the statute shouldn't be construed to permit actions that are otherwise prohibited by law, including unauthorized practice. But that's a savings clause. But, Judge, I essentially, I basically agree with you. And that's why what this Court did is ultimately it said it was unfair or deceptive. Now, there are situations, and it may be, Judge Fletcher, but not every instance that would amount to unauthorized practice would also be deceptive. Oh, sure. That is to say, she can be doing nothing that's unauthorized practice of law, but having misrepresented somehow the nature of her services, misrepresented the initial fee, and then charging more, there are lots of things that are unfair and deceptive that may not involve unauthorized practice of law. Absolutely. I was saying the converse, that not everything that's necessarily of unauthorized practice would always be unfair or deceptive. The Court said the unauthorized practice of law is fair and is unfair and deceptive. That was part of the holding of the Court. With respect to the overview, in this case where it was not in isolation, it was unfair or deceptive because, number one, it contained mistakes, and, number two, it was the basis to charge more than what they were representing that they were charging for. I thought the Court made a blanket holding the unauthorized practice of law is unfair and deceptive. You don't recall that the Court made that holding? I think there were general statements to that effect, but I don't consider that a holding. The holding was at the end of the discussion of the legal overview. It was the unauthorized practice and unfair or deceptive. On page 659 of the district court's decision, it looks like a pretty blanket statement. It says, the unauthorized practice of law constitutes a fraudulent, unfair, or deceptive practice in the context of Section 110, period. I'm sorry. You're referring to the district court decision? Yes. Well, I was referring, I'm sorry, to the confusion, to the bankruptcy court's decision, which I believe under this Court's law, you essentially are reviewing the bankruptcy court's decision as if the district court's decision didn't exist. So I was referring, I'm sorry, to the bankruptcy court's decision. I do not believe the bankruptcy court's decision. But I was asking you to comment on the district court's ruling, though. So you're saying that's totally, we should disregard that? I certainly wouldn't ask you to reach out in a case where it's not presented at hold that everything that a State bar might consider the unauthorized practice is always a violation of the unfair and deceptive practice. I don't think you need to do that here. Here, the way it comes into the case is because there were errors in it, and it was a basis for the way they were able to charge $199 rather than, you know, 50 or 60 or 90, which is what the bankruptcy court held would have been a reasonable fee, or even 150, which was their view of what the typing should be. Let me ask you why you're trying to do that. I think I know. Let me try this out on you to understand. Obviously, there's some tension between the authorization of the bankruptcy law to allow preparers to do this and the practicing bar who would like to do it themselves. And the statute is trying to set up, you know, people, these people are going into Chapter 7 bankruptcy or maybe Chapter 13 bankruptcy. They don't have much money. To allow high-priced lawyers to take a fair amount of that is unwise if you can get away with providing the same service more cheaply. Therefore, we authorize preparers. Are you shying away from a holding that unauthorized practice of law is necessarily unfair and deceptive because that gives too much power to the State and the State bar to basically emasculate this Section 110 authorizing preparers? Your Honor, I wouldn't say it was kind of a conscious expression of a policy decision the Department has made in taking that position. It's just that we recognize the statute. What's the statute trying to do? Right. And if we interpret the statute to say any time the State considers something unauthorized practice of law, that necessarily means that it's unfair and deceptive under the statute. That would give to the State bar and to the State legislature a fair amount of power to forbid the use of preparers because if they say somebody giving a document and filling it out is unauthorized practice of law, bingo, the preparer part of the statute is gone. Well, Your Honor, one of the difficulties in terms of reaching that decision here is I'm not even sure there's a dispute between the parties on that issue. The way I understand Appellant's argument, he's saying what they did was not the unauthorized practice. Right. I don't hear him to say, Your Honor, even if it was the unauthorized practice of law, that's still fine under 110. And so one of the reasons I'm urging this Court not to reach out and decide that question is because you don't even have adversarial briefing on it. And, you know, with respect to the question from Judge Alicorn, I was recognizing that there may be certain situations where the provision of a book alone outside the context of the provision of a service might not be the unauthorized practice. Certainly the publication of a treatise is not the unauthorized practice. And so deciding the outer reaches of these lines is something that I don't think the Court has to do here. That's all I can say. Counsel, I hate to keep delivering this point, but on page 309 of the Bankruptcy Court's decision, it says, even were this book accurate and complete, its distribution for use by the BPP's customers in this fashion constitutes the unauthorized practice of law and amounts to a deceptive and unfair practice in violation of Section 110. So you still don't think the Bankruptcy Court made a ruling on the unauthorized practice of law question? None, Your Honor. With respect to the overview, I believe it was the critical word is and. I believe it made two holdings. It was unauthorized practice and unfair and deceptive. And that paragraph is preceded by three or four or five paragraphs in which the Court specifies errors in the content of the book. Those errors, as Judge Fletcher said, they don't go to whether there's an unauthorized practice. I mean, you can be engaged in unauthorized practice even if your advice is 100 percent correct. And so the errors went to the unfair and deceptive. And the way I read the and is it was making two findings. All right. And in my view, they're independent. All right. Thank you. If a lawyer gave unfair and deceptive advice, would that be a violation of 110? If a lawyer did it and assisted in the – if what the lawyer did is it was in the context of preparing a document for filing in the bankruptcy court, I believe the answer would be yes. No, I'm sorry. I just want to say no. I'm sorry. Bankruptcy petition preparer means a person other than an attorney or an employee of an attorney. So the answer is no. And this is a 110 simply doesn't govern lawyers? It doesn't govern. But Congress didn't feel a need to step in to that because there was all kinds of state professional responsibility laws that would take care of that situation. It felt that there was a specific crisis involving lay bankruptcy preparers and need to deal with it. Because the State Bar does not regulate lay preparers. Correct. Otherwise, they'd fall through the cracks. Okay. Thank you very much. Thank you, Your Honor. It is very clear what the statute was intended to deal with. And that was the problem of non-lawyers giving legal advice. That's exactly what this statute was all about. And therefore, Your Honor, questions concerning whether what Ms. Scott did constitute legal advice is right on the money. You cannot escape having to face the question whether what Ms. Scott did constituted legal advice because, as you know. Obviously, well, I think obviously. But she could violate Section 110, Section I-1, the Freudland Unfair Deceptive Act provision, even if she's not engaged in the practice of law. Isn't that right? That is certainly possible. But that's not this case. But why is that not this case? Because, as Judge Rawlinson very accurately pointed out, the bankruptcy court and the district court both predicated their conclusion that there were unfair and deceptive practices on the fact that there was the unauthorized practice of law. But, of course, we can affirm on any ground. I'm sorry? But, of course, we can't affirm on any ground. Your Honor, certainly can't. That is to say, if we were to decide that the unauthorized practice of law does not necessarily and inescapably lead to a conclusion that it's fraudulently unfair or deceptive, we could nonetheless find that in the circumstances here that Ms. Scott did within the meaning of the statute, engage in a fraudulent unfair or deceptive act. Then, Your Honors, we're faced with having to deal with the problem of censorship, of looking at the substance of information, of trying to review. How does censorship show up? Well, for example, Your Honor, if we're going to challenge the correctness or the incorrectness or the completeness or incompleteness of materials, we're going to have to step back and look at the Administrative Office of the United States Court Publication of Bankruptcy Basics, which has errors in it. And it is distributed. It is prefaced by a disclaimer that says, This is not the giving of legal advice. Virtually the same disclaimer that appears in the materials that Ms. Scott used. Is that commercial speech, though, from DAO? Well, if it is used, I think the issue of commercial speech doesn't raise its head here at all because we're talking about whether there are errors and whether the errors rise to the level of being unfair or deceptive. Is Ms. Scott handing out an AO document? Several of the We the People franchisees are using AO documents. I didn't ask that question. Is Ms. Scott handing out an AO document? Not at the time that she, in this case. That's not in front of us at this time. At this time. So how is the AO document relevant? It's simply because it shows that the materials that are used are general information. They are not necessarily complete. They are not necessarily 100 percent foolproof in terms of what they. But then the question is, she's charging $199 for a document that she hands out that may be incorrect. And if it's dramatically incorrect, which I'm not now asking you to concede, and she's charging an amount far in excess of the value, that sounds as though it's plausibly a fraudulent, unfair, or deceptive act. She's not charging for those documents. Those documents are simply given to the customers as part of the complete services, and she doesn't. Oh, you mean she's charging only for the typing? She's charging for the services that she provides to allow an individual to prepare to have a petition prepared so that the individual. But she is charging for handing these documents out. That's part of the service. If Your Honor wishes to articulate it in that fashion, certainly that's the case. Well, I'm trying to understand this, and you keep kind of slipping away from me saying, well, but she's not charging for handing out these documents. She's only charging for something else. And I say, well, she's only charging for the typing. And then you say, well, no, she's handing out the documents. The documents are not the basis upon which the price is calculated that she charges. The testimony that she gave and the record is uncontradicted in this respect. The $199 is not a function of the documents at all. It is a function of other factors, factors which the courts below didn't want to consider at all. As a matter of fact, the bankruptcy court wouldn't even accept the testimony of the secretarial service with regard to what it would cost to type a bankruptcy petition. The services that are available in the Boise area for the work that's being done here would cost more than what Ms. Scott cost. Let me, Your Honor, just emphasize one point, and that is that both of the decisions below are per make their conclusions based on a finding of the unauthorized practice of law. It is not true, the statute is really clear, it is not true that you can engage in the unauthorized practice of law and still not be found to have violated Section 110. 110K specifically says that nothing is authorized to be done by a bankruptcy petition preparer that otherwise constitutes the unauthorized practice of law. These courts below rested their decisions in finding Ms. Scott who had violated Section 110 by having found as a predicate for their conclusion. Sotomayor, how does Section K help you? It simply brings into the calculus that whatever it is that a bankruptcy petition preparer can do, it cannot constitute a violation of nonbankruptcy law with respect to the unauthorized practice of law. I didn't understand that. Say that again. No matter what a bankruptcy petition preparer can do, if there's nothing else in the statute that says it can't be done, it nevertheless cannot constitute the unauthorized practice of law. That's 110K. I don't think I read it that way. I think what it says is nothing in this statute is going to authorize the unauthorized practice of law. I tried to say it that way, Your Honor, and I apologize for not saying it as succinctly as you. Okay. Thank you very much, Your Honor. Thank you. Thank both sides for a helpful argument in what turns out to be quite an interesting case.
judges: Alarcon, W. Fletcher, Rawlinson